**United States District Court**
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| LARRY OWENS | § | |
| --- | --- | --- |
| | § | |
| v. | § | CASE NO. 3:16-CV-3162-S |
| | § | |
| DALLAS COUNTY COMMUNITY COLLEGE DISTRICT | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 34]. For the following reasons, the Court grants the Motion.

### I. BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Judge Sam A. Lindsay to the docket of this Court on March 8, 2018.

Defendant Dallas County Community College District ("DCCCD") is a Junior College District formed under the Texas Constitution and the Texas Education Code. Second Am. Compl. ("Compl.") 1. Plaintiff Larry Owens ("Owens") was employed by Brookhaven College ("Brookhaven"), one of the colleges in the DCCCD, as an Instructional Support Associate. *Id.* at 4. He began working for Brookhaven in the 1990s as a part-time employee and later became a full-time employee. *Id.* at 5.

Shortly before he became a full-time employee, Owens claims that a Brookhaven faculty member, Lauri Collins ("Collins"), called him asking for help with her drinking problem. *Id.* Owens attended Alcoholics Anonymous meetings with Collins, attempted to help her, and moved in with her for a short period of time. *Id.* Collins then helped Owens obtain a full-time position

with Brookhaven. *Id.* Owens claims that Collins attempted to have an intimate relationship with him and was angry with Owens when he refused. *Id.*

Collins ultimately told Owens he needed to move out, and he complied. *Id.* Once Collins and Owens were no longer living together, Collins allegedly used her position to cause problems for Owens. *Id.* Ultimately, Owens told his former supervisor, Jerry Hill ("Hill"), that he intended to file sexual harassment charges against Collins. *Id.* However, Hill later told Owens that he did not believe Collins would cause Owens any further problems. *Id.*

On September 3, 2005, Owens was involved in an accident while riding his motorcycle. *Id.* The accident left him immobilized in bed for an extended period of time. *Id.* Shortly after the accident, while Owens was still bedridden, Collins came to his home and attempted to convince him to resign his position with the school. *Id.* Owens refused to make a decision until he was ready to determine whether he would be able to continue working. *Id.*

When Owens returned to work, he claims that Collins tried to make him resign. *Id.* Owens alleges that, among other things, Collins objected to Owens taking his lunch hour for rehabilitation and threw objects onto the floor of his office. *Id.* After allegedly enduring increasing harassment, Owens filed a formal grievance for harassment and discrimination with Brookhaven. *Id.* at 6. Owens's direct supervisor, Giraud Polite ("Polite"), asked Owens to sign an agreement to resolve the grievance. *Id.* The agreement suggested that changes in Owens's job performance would solve the problem. *Id.* Owens objected to the agreement, but Polite told him that he would make sure the harassment stopped. *Id.* For this reason, Owens signed the agreement. *Id.*

Shortly thereafter, Collins told Owens he owed her an apology. *Id.* When Owens refused, Polite told him that he had to apologize. *Id.* Polite allegedly said that if Owens would not sign the apology, then he could resign. *Id.* If Owens refused to resign, Polite said he would have Owens

2

assigned to work directly for Collins or would transfer him to another department. *Id.* However, Polite allegedly told Owens that there were no other openings, so a transfer was not actually an option. *Id.* Polite also stated that the problem was Owens's fault because he had a relationship with Collins. *Id.*

After this meeting, Owens's psychologist "took him off work" due to work-related stress. *Id.* Then, Owens "was placed on . . . [l]eave" pursuant to the Family and Medical Leave Act of 1993 ("FMLA"). *Id.* While on FMLA leave, Owens alleges that he received two phone calls from the Dean of the Business Division, saying that Owens would lose his job if he did not return to work and telling him to sign a document stating that he was not disabled and was fit for work. *Id.* The Dean refused to discuss Owens's issues with Collins. *Id.*

Ultimately, Owens was terminated because he would not return to work. *Id.* at 7. Owens asked Brookhaven to assign him to work under anyone other than Collins. *Id.* Brookhaven responded by stating that they interpreted the physician's note to mean Owens was unable to return to work and terminated his employment. *Id.*

On April 12, 2011, Brookhaven advised Owens that he would be terminated for failing to return to work. *Id.* On May 12, 2011, Owens received a letter from Carla Peacock ("Peacock") stating that she wished to continue the interactive discussion regarding his "work status" at Brookhaven. *Id.* In response, Owens's attorney sent Peacock a letter outlining the issue with Collins and the background of the situation. *Id.* Owens's attorney noted that Owens would be happy to meet with Brookhaven if Brookhaven was willing to address his concerns. *Id.* Rather than respond to the letter, Brookhaven terminated Owens's employment. *Id.*

Based on the foregoing allegations, Owens brought claims for sex discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), disability discrimination pursuant to the

3

Americans with Disabilities Act ("ADA"), and various violations of state law and 42 U.S.C § 1983. DCCCD filed a motion to dismiss Owens's petition, and the Court entered an order (the "Lindsay Order") adopting Magistrate Judge Paul D. Stickney's Findings, Conclusions, and Recommendation. The Lindsay Order: (1) permitted Owens to replead to address whether he had adequately exhausted his administrative remedies and whether equitable tolling applied; and (2) dismissed with prejudice Owens's other claims, including his § 1983 claim. On August 7, 2017, Owens filed his First Amended Complaint. DCCCD again moved to dismiss. Owens then moved for leave to file his Second Amended Complaint (the "Complaint"), and the Court granted the motion. Owens filed his Second Amended Complaint on January 11, 2018.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual

4

allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III. ANALYSIS

#### A. *Section 1983*

As an initial matter, the Court notes that Owens's § 1983 claim was dismissed with prejudice pursuant to the Lindsay Order. Owens again argues that "a violation of [§ 1983] is admissible . . . for the purpose of showing knowledge and intent concerning the violation of non-time barred EEOC claims." Resp. 2. This Court reiterates that "it is premature at this stage of the litigation to determine the admissibility of evidence that Plaintiff might or might not present at trial." *Owens v. Dall. Cty. Cmty. Coll. Dist.*, No. 3:16-CV-3162-L, 2017 WL 3190727, at *5 (N.D. Tex. May 16, 2017), *adopted by* 2017 WL 3172748 (N.D. Tex. July 26, 2017). Even if the Court were to ultimately find that the evidence underlying Owens's § 1983 claim is relevant to a non-dismissed claim, Owens may not assert a claim that has already been dismissed with prejudice. Thus, the Court grants DCCCD's Motion to Dismiss with regard to Owens's § 1983 claim.

#### B. *Employment Discrimination*

To bring a claim under Title VII and the ADA, a plaintiff must first exhaust his administrative remedies. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002).

To do so, he must file a charge with the Equal Employment Opportunity Commission ("EEOC") that identifies the employment practices he is challenging. 42 U.S.C. §§ 2000e-5(e)(1), (f)(1). Upon judicial review, courts in the Fifth Circuit determine what is to be reviewed "somewhat broadly" and review both what is contained in the four corners of the charge and "the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). In deferral states, such as Texas, a Title VII plaintiff must file his EEOC charge within three hundred days of the date on which the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e-5(e)(1); *Lahr v. Fulbright & Jaworski, L.L.P.*, No. 3:94-CV-0981, 1996 WL 673438, at *1 (N.D. Tex. Aug. 15, 1996). This requirement is not a jurisdictional requirement, "but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Equitable tolling is appropriate when, *inter alia*, the EEOC misleads a plaintiff as to his rights or makes a procedural error. *McKee v. McDonnell Douglas Tech. Servs. Co.*, 700 F.2d 260, 263-65 (5th Cir. 1983). "The burden is on the plaintiff to show a factual basis to toll the limitations period." *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 457 (5th Cir. 2011) (citing *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988)).

DCCCD argues that Owens's Title VII and ADA claims should be dismissed because Owens failed to timely file a charge with EEOC. In the Complaint, Owens alleges that he timely filed an EEOC charge on August 12, 2011, the date on which he submitted a letter to the EEOC detailing the alleged discrimination. However, he fails to allege when the EEOC received that letter. *See Kirkland v. Big Lots Store, Inc.*, 547 F. App'x 570, 573 (5th Cir. 2013) ("A claim is considered filed when it is *received* by the EEOC or the state agency responsible for the

6

administration of complaints of employment discrimination." (citations omitted)). Thus, even if the letter could constitute an EEOC charge, Owens fails to allege that the letter was filed within three hundred days of his termination. Further, the Complaint does not include any allegations relating to the contents of the letter, so it is impossible for the Court to determine which employment practices Owens challenged in that letter. Without knowledge of which practices were challenged in the letter, the Court cannot determine the proper scope of its judicial review.

In his Response, Owens shifts his argument and alleges for the first time that he timely filed a charge on October 21, 2011, the date the EEOC received his Intake Questionnaire (the "Questionnaire"). *See* Resp. Ex. A (EEOC Case Log); *see also Kirkland*, 547 F. App'x at 572 n.3 ("The submission of an intake questionnaire is 'sufficient to set [] the administrative machinery in motion' and may constitute a filing for the purposes of Title VII." (quoting *Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007))). However, the Questionnaire contains only time-barred allegations. The Questionnaire, attached to Owens's Response as Exhibit A, alleges two discriminatory actions. When asked for the date of the first action, Owens answered, "Sept. 3, 2005," more than six *years* before the Questionnaire was filed. Resp. Ex. A. Owens also alleged in the Questionnaire that he asked for a change or assistance to do his job because of his disability in May 2010—more than one year before the Questionnaire was filed. *Id.* Because Owens failed to file a charge of discrimination within three hundred days of the discriminatory actions alleged in the Questionnaire, and because the Questionnaire does not mention his termination, he has not exhausted his administrative remedies.

Owens cannot rely on equitable tolling to save his claim. The allegation that the EEOC and Owens believed he filed his charge within three hundred days of his termination is irrelevant,

7

as the Questionnaire does not contain a single allegation related to a wrongful termination.[1] Therefore, Owens has not met his burden of establishing a factual basis to toll the limitations period, and the Court grants DCCCD's Motion to Dismiss.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants DCCCD's Motion to Dismiss with prejudice. Owens has had two opportunities to amend his complaint over the course of almost two years. He has had the benefit of prior motions to dismiss and the Lindsay Order to alert him to potential problems with his pleadings. The Court presumes that Owens has pleaded his best case at this point and declines to allow him another opportunity to amend his complaint.

**SO ORDERED.**

SIGNED September 25, 2018

KAREN GREN SCHOLER
**UNITED STATES DISTRICT JUDGE**

---

[1] Based on Owens's pleadings, the EEOC's representations appear to have been based on the Questionnaire rather than the letter. Because Owens relies on the Questionnaire in his Response, and because the EEOC began tracking Owens's case when it received the Questionnaire, the Court will not consider the letter in its analysis of equitable tolling.